IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

IN ADMIRALTY

CASE NO. ___22-cv-10027___

IN THE MATTER OF:

THE COMPLAINT OF KEY WEST JETSKI,
INC. AS OWNER OF THE YAMAHA PERSONAL
WATERCRAFT (HULL ID# YAMA0735A121)
ITS ENGINES, TACKLE, APPURTENANCES,
EQUIPMENT, ETC. IN A CAUSE FOR EXONERATION
FROM OR LIMITATION OF LIABILITY,

      Petitioner.

_____/

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIAIBLITY

WHEREAS KEY WEST JETSKI, INC. (the "Petitioner"), as the owner of the Yamaha Pleasure Watercraft bearing Hull ID# YAMA0735A121 (the "Vessel"), by and through their undersigned counsel, file this Petition for Exoneration from or Limitation of Liability pursuant to Chapter 30501 *et. seq.* of Title 46, United States Code, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

### JURISDICTION, PARTIES AND VENUE

1.     This is a claim within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §§1331 and 1333 and 46 USC §§ 30501 *et seq.* Petitioner specifically invokes Rule 9(h) or the Federal Rules of Civil Procedure.

2.      At all times material hereto, the Yamaha Pleasure Watercraft bearing Hull ID# YAMA0735A121 (the "Vessel"), was owned by the Petitioner, KEY WEST JETSKI, INC., a Florida limited liability company with its principal place of business located at 5001 5th Ave, Key West, Florida 33040 ("Owners").

3.      At all times material hereto, the Vessel was registered in Key West, Monroe County, Florida.

4.      At all times material hereto, the Vessel was rented to and operated by Uday Kizhakekara ("Operator").

5.      The incident giving rise to this matter occurred on January 5, 2022, during the course of a one hour jet ski rental tour in the navigable waters in or around Key West, Florida.

6.      This Complaint is filed within six (6) months of the Owners receiving their first notice of a claim.

## OPERATIVE FACTS REGARDING THE INCIDENT

7.      The incident involved the allision of the Yamaha Personal Watercraft bearing Hull ID# YAMA0735A121 (the "Vessel") with the Flemming Key Bridge in Flemming Key Cut during a jet ski tour of the areas surrounding Key West, Florida.

8.      The incident occurred on the navigable waterways of Flemming Key Cut on January 5, 2022 at approximately 10:55 a.m.

9.      The weather conditions on the morning of January 5, 2022, were ideal for jet ski operation, with very little and little to no current.

10.     Prior to the incident on January 5, 2022, Uday Kizhakekara and his son Nikita Kumar Kanakarajan rented the Vessel from KEY WET JETSKI, INC. pursuant to the Bare Boat

Lease Rental Contract (attached hereto as **Exhibit "1"**) for the purposes of participating in the aforementioned jet ski tour in the navigable waters around Key West, Florida.

11.     As a routine custom and practice, Petitioner requires all jet ski tour participants to complete PWC Orientation Checklists prior to the commencement of their rentals.

12.     Prior to the commencement of their Vessel rental and the incident on January 5, 2022, Uday Kizhakekara and his son Nikita Kumar Kanakarajan each completed and initialled each item on the two page PWC Renter Orientation Checklist (attached hereto as **Exhibit "2"**) that cautions renters to "*Know Operational Controls*", "*Do Not Release Throttle When Trying to Steer*", "*Take Early Action to Avoid Collisions*", "*Scan Constantly*", "*Operate Defensively*", and "*Avoid Aggressive Maneuvers*".

13.     Prior to the commencement of their Vessel rental and the incident on January 5, 2022, Uday Kizhakekara executed the Release of Liability, Assumption of Risk, Waiver of Claims, Indemnification & Binding Arbitration Agreement (attached hereto as **Exhibit "3"**).

14.     Prior to the commencement of their Vessel rental and the incident on January 5, 2022, Uday Kizhakekara completed and initialled each item on a second PWC Renter Orientation Checklist (attached hereto as **Exhibit "4"**).

15.     Prior to the commencement of their Vessel rental and the incident on January 5, 2022, Uday Kizhakekara and his son Nikita Kumar Kanakarajan each executed KWJ's Notice to the Minor Child's Natural Guardian waiver (attached hereto as **Exhibit "5"**).

16.      The PWC Renter Orientation Checklists executed by Uday Kizhakekara and his son Nikita Kumar Kanakarajan clearly and repeatedly stress the importance of avoiding collisions by scanning constantly, maintaining a safe speed, and maintaining a safe distance from objects and other boats, specifically warning in the "*Avoid Collisions*" subsection:

"***Do Not Release Throttle when Trying to Steer***
- *You need throttle to steer.*

***Take Early Action to Avoid Collisions***
- *Remember, PWCs and other boats <u>do not have brakes</u>.*"

17.     At the time Mr. Kizhakekara completed the rental paperwork (appended hereto as Exhibits 1-5), he advised the Petitioner's employees that he had operated jet skis many times before, that he was experienced at jet ski operation and that he did not have any questions.

18.     Incidentally, the Petitioner's employees answered several questions about jet ski operation and the characteristics of the tour itself (asked by Mr. Kizhakekara's wife, who was a less experienced operator renting her own PWC) in Mr. Kizhakekara's presence before or at the time Mr. Kizhakekara completed the rental paperwork (appended hereto as Exhibits 1-5).

19.     Next, as a routine custom and practice, Petitioner requires all jet ski tour participants to observe a safety video visually demonstrating the safe operation of a jet ski, including the amount of safe distance (100 yards) that any operator should maintain to avoid collisions.

20.     Following completion of the rental paperwork (appended hereto as Exhibits 1-5), Uday Kizhakekara and his son Nikita Kumar Kanakarajan observed that requisite safety video before proceeding down to the dock at the Petitioner's facility.

21.     Next, as a routine custom and practice, Petitioner requires all jet ski tour participants to attend a further oral safety briefing by one of the Petitioner's tour guides, thoroughly covering the characteristics of the jet ski tour, the characteristics of the jet skis and all instructions for the safe operation of the jet skis, including but not limited to PWC controls, hand signals, following in a single file line (no circles or donuts), keeping 100 yards distance, avoiding collisions, safe operation with a passenger onboard, etc.

22.     The Petitioner's tour guide safety briefings also always include a visual demonstration of safe operation of the PWC by the tour guide in the water prior to the commencement of the tour.

23.     Prior to the commencement the jet ski tour on January 5, 2022, Uday Kizhakekara and his son Nikita Kumar Kanakarajan were then given the above-described oral safety briefing and visual safe operation demonstration by Petitioner's tour guide assigned to the jet ski tour.

24.     Following completion of the oral safety briefing and visual demonstration, Petitioner's tour guides ask all tour participants whether they have any questions before commencing the tour and, if not, organize the participants in a single file line based on experience level (typically from most experienced to least experienced).

25.     At this time, Mr. Kizhakekara advised the Petitioner's tour guides for a second time that he was a very experienced jet ski operator and that he did not have any questions but, instead, requested to stay at the back of the single file line behind his wife, who was a first time PWC operator, in case she needed extra assistance.

26.     Petitioner's tour guides obliged Mr. Kizhakekara's request, putting his wife's jet ski right in front of his jet ski at the end of the single file line, and assigned one of the Petitioner's two (2) tour guides exclusively to Mr. Kizhakekara and his wife for the duration of the tour.

27.     Next, as a routine custom and practice, Petitioner's tour guides complete an initial safety ride at a slow speed at the outset of all jet ski tours, during which they observed all tour participants to ensure they are operating their jet skis safely and successfully.

28.     In accordance with this routine custom and practice, at the commencement of the tour around 9:30 a.m. on January 5, 2022, the Petitioner's tour guides observed Uday Kizhakekara

safely and successfully operating the Vessel with his son as aboard as passenger during this initial safety ride.

29.     Petitioner's tour guides specifically noted that, from the very outset of the tour, Mr. Kizhakekara appeared to be a very confident and experienced jet ski operator, who had no difficulty operating his jet ski.

30.     After the initial safety ride, at the first initial stop, Petitioner's tour guide (who was assigned to Mr. Kizhakekara's party) verbally asked the Kizhakekara family if they had any concerns. Mr. Kizhakekara and his family advised that they were happy with how the tour was going so far, continuing to proceed at a slower pace at the end of the single file line.

31.     Mr. Kizhakekara and his family participated in the tour successfully for over one (1) hour, including successfully passing under the Boca Chica Bridge without any difficulty or incident, before the allision occurred.

32.     The only issue noted by the Petitioner's tour guide who was assigned to the Kizhakekara party was that, several times during the tour, he had to ask Mr. Kizhakekara to stop doing donuts and circles, when he appeared to be growing slightly impatient with the slow pace.

33.     In accordance with routine custom and practice, Petitioner's tour guide stopped with the Kizhakekara party before passing under each of the two (2) bridges on the jet ski tour and specifically instructed them again on how to safely pass under the bridge, following directly behind the Petitioner's tour guide at a safe speed.

34.     As described above, Mr. Kizhakekara had absolutely no difficulty passing under the Boca Chica Bridge following the same procedures at the beginning of the tour.

35.     Around 10:55 a.m. on January 5, 2022, at the next to last stop of the tour, Petitioner's tour guide gave Mr. Kizhakekara and his family instructions them for safe passage under the Flemming Key Bridge just before the incident.

36.     Immediately thereafter, as the group proceeded under Fleming Key Bridge, Mr. Kizhakekara failed to follow the safety instructions he had just been given, exited the single file line and proceeded to crash into the bridge.

37.     Uday Kizhakekara is believed to have sustained some injuries as a result of his allision with the bridge.

38.     Immediately following the incident, the United States Coast Guard responded to provide medical assistance to Mr. Kizhakekara at the scene. He was subsequently brought ashore by boat and transported to a medical facility for treatment.

39.     Florida Fish and Wildlife Commission (FFWC) appeared at the scene to investigate shortly thereafter and found the Petitioner to be in compliance with all statutory livery requirements. No citations were issued as a result of this incident.

40.     At all times material hereto, the Vessel was seaworthy properly and efficiently manned, supplied, equipped, and furnished; and well and sufficiently fitted and supplied with suitable machinery, tackle, apparel and appliances, all in good order and condition and suitable for the use for which it was engaged.

41.     The incident of January 5, 2022, as aforeseaid, and the resulting injuries, losses and damages, were neither caused, nor were contributed to, by any fault, neglect, or want of care on the part of the Petitioner, nor anyone for whose acts Petitioner are, or may be responsible, but on the contrary, were caused solely by conditions beyond Petitioners' control and actual or constructive knowledge.

42.     Petitioner denies any privity with or knowledge of any particular wrongful act or omission, fault, want of due care or breach of any duty that could be considered a legal cause of the incident.

43.     The following persons, as of this date, have asserted claims against the Petitioner as a result of the incident of January 5, 2022:

(a)     Justin Shapiro, Esq.
Adam Rose, Esq.
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Email: shapiro@leesfield.com
Email: alpizar@leesfield.com

(b)     Uday Kizhakekara, Vessel Operator

(c)     Nikita Kumar Kanakarajan, Passenger

44.     Petitioner desires to contest their liability for any such claims and, therefore, shows they are entitled to a decree exonerating them and the vessel from liability. Should this Honorable Court, however, adjudge that Petitioner is liable to any extent in the premises, then Petitioner claims the benefit of limitation of liability as provided in 46 U.S.C.A. Section 30501 et seq., and all statutes amendatory thereof and supplementary thereto.

45.     Petitioner alleges that the amount of the damages and/or claim hereinabove described potentially exceed the amount or value of Petitioners' interest in the Vessel together with any freight pending. Petitioner offers and files its Certificate of No Freight Pending attached hereto as **Exhibit "6"** accordingly.

46.     Petitioner asserts that the value of the Vessel was less than $2,598.00 following the termination of the January 5, 2022 incident which gives rise to this limitation action.

47.     Petitioner offers and files an Affidavit of Value by Donald Kirkpatrick on behalf of the Petitioner, KEY WEST JETSKI, INC., the owner of the Vessel after the incident, attesting that the value of the Vessel is less than $2,598.00 attached hereto as **Exhibit "7"**.

48.     Petitioner offers and files an Ad Interim Stipulation (attached hereto as **Exhibit "8"**) with approved surety for the payment into this Honorable Court of the aggregate amount of Petitioner's interest in the Vessel at the termination of the voyage aforesaid, with interest at the rate of six (6%) percent per annum from the date of the Stipulation, and for all costs; and in addition thereto, Petitioner is preparing to give bond or stipulation for any amount in excess of the Ad Interim Stipulation as may be ascertained and determined to be necessary under any orders of this Honorable Court, as provided by the laws of the United States and the Federal Rules of Civil Procedure.

49.     Petitioner further respectfully requests that this Court enter an Order for Monition to Claimants and for Restraining Prosecution of Claims, which gives notice to all claimants and potential claimants of the filing of this action in accordance with Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule F") and enjoins other suits and legal actions and provide for all claims to be presented to the Court in this matter. Petitioners proposed Monition is attached hereto as **Exhibit "9"**.

**WHEREFORE**, Petitioner requests:

(a) In accordance with the provisions set forth in Supplemental Rule (F)(4) and Local Admiralty Rule 7.01(g), that this Honorable Court enter an Order approving the Monition filed by the Petitioner and directing issuance of a notice to all persons, firms and corporations claiming

damage for any and all losses, damages, destructions, deaths or injuries, resulting from the incident of January 5, 2022, admonishing each of them to file their claim with the Clerk of this Court and serve copies of said claims on the attorney for Petitioner on or before the date fixed by the Court in the notice or be forever barred or permanently enjoin from making or filing any such claims, to make due proof of their respective claims before this Court, and to appear and answer the allegations of this Complaint according to the law and rules and practices of this Court on or before a certain time to be fixed by the notice;

(b) that this Honorable Court enter an Order approving the Ad Interim Stipulation filed by Petitioner;

(c) that this Honorable Court restrain, stay and enjoin the further prosecution of any and all actions, suits, or proceedings already commenced and the commencement or prosecution thereafter of any and all actions, suits or proceedings of any nature or description whatsoever in any jurisdiction against Petitioner, as aforesaid, or against the Yamaha Pleasure Watercraft bearing Hull ID# YAMA0735A121 ("Vessel") or against any property of the Petitioner, except in this action to recover damages for or in respect of any loss, damage, injury, or destruction caused by or resulting from the aforesaid voyage;

(d) that this Honorable Court enter judgment that Petitioner and the vessel are not liable for any losses, damages, deaths, injuries, destruction, or any other claim whatsoever arising out of the incident of January 5, 2022, or out of the voyage described herein and that accordingly Plaintiff be exonerated from any and all liability which has been or may be claimed against them as a result of this voyage and incident; in the alternative if such liability is found to exist, that Petitioners' liability be limited to the amount of the value of the Petitioners' interest in the Vessel and pending freight immediately after the above-mentioned incident of January 5, 2022;

and that the money or security paid be divided pro rata among such Claimants as may duly provide their claims before this Court, saving to all parties any priorities they may be legally entitled to; and that judgment and decree be entered discharging Petitioner and the Vessel of and from all further liability and forever enjoining and prohibiting filing and prosecution of any claims against Petitioner or their property in consequence of or in connection with the matters and happening referred to in this Complaint.

(e) that Petitioner be granted such other, further, or different relief as may be proper under the circumstances.

Dated this <u>18th day of April, 2022</u>.

Respectfully submitted,

By:      _/s/ Neil Bayer_____
Neil Bayer, Esq.
Fla Bar No.: 615684

By:      _/s/ Chase Alexandra Jansson_____
Chase Alexandra Jansson, Esq.
Fla Bar No.: 1002265

Campbell Johnston Clark, LLP
*Attorneys for the Petitioner*
2600 Douglas Road
Suite 508
Coral Gables, FL  33134
Tel. : 786-204-3784
Email: neil@cjclaw.com
Email: chase@cjclaw.com
Email: cindy@cjclaw.com